UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MISSISSIPPI FARM BUREAU
CASUALTY INSURANCE COMPANY                                          PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:17CV198TSL-LRA

ELIJAH J. BELL AND
CLARISSA BELL                                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendants Elijah J. Bell and Clarissa Bell to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiff Mississippi Farm Bureau Casualty Insurance Company (Farm Bureau) has responded in opposition to the motion. The court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes the motion to dismiss should be granted.

Defendants owned and occupied a home located at 5922 Binnsville Road, Scuba, Mississippi. On June 9, 2016, the home and its contents were damaged or destroyed by fire. Defendants filed a claim for benefits under their homeowners' policy with Farm Bureau. In connection with its investigation, Farm Bureau requested that defendants submit to an examination under oath. According to Farm Bureau, defendants initially refused, repeatedly, and eventually offered to appear for examinations under oath only if Farm Bureau would agree to seal the transcripts of their statements, ostensibly because Elijah Bell was under

criminal investigation for arson and was desirous of both complying with the policy's cooperation provisions and yet also preserving his Fifth Amendment right against self-incrimination.[1] Farm Bureau filed the present action on March 22, 2017, seeking a declaratory judgment that defendants' alleged breach of the cooperation clause and certain misrepresentations and concealments by defendants following the fire loss have voided the policy. In its complaint, Farm Bureau has asserted jurisdiction based on diversity of citizenship, alleging that it is a Mississippi citizen while plaintiffs are citizens of Alabama.

Following service of the complaint, defendants moved to dismiss, contending there is no diversity of citizenship as they are, and were at the time the complaint was filed, citizens of Mississippi. Defendants presented with their motion to dismiss affidavits in which they state the following: that they lived at their home at 5922 Binnsville Road, Scooba, Mississippi, from 2002 until the home was destroyed by fire on June 9, 2016; that following the fire loss, they temporarily relocated to Elijah

---

[1] Farm Bureau advises that Elijah Bell has been charged with arson relating to the June 9, 2016 fire. Record evidence reflects that on January 11, 2017, defendants herein filed a suit in the nature of a declaratory judgment action in the Chancery Court of Kemper County, Mississippi, asking that the court declare that their agreement to submit to an examination under oath on condition that the transcript of their statements be sealed complied with the policy's cooperation provision. Farm Bureau has advised that Elijah Bell has been charged with arson relating to the subject fire.

2

Bell's mother's home in Alabama because they have "no where else to go until [their] home is rebuilt" in Mississippi; that the only real property they own is at 5922 Binnsville Road in Scooba, Kemper County, Mississippi; and that they have no intention to remain in Alabama and instead intend to return to Mississippi as soon as possible, i.e., as soon as they receive their insurance proceeds and are able to rebuild their home. They thus maintain that complete diversity is lacking as they are citizens of Mississippi, and that the case must therefore be dismissed.

In response, Farm Bureau argued that defendants' "self-serving conclusory statements" in their affidavits regarding their alleged intent to move back to Mississippi should not be credited since the competing evidence it submitted indicated a clear lack of intent on their part to return to Mississippi. It further requested leave to conduct jurisdictional discovery in connection with the motion. The court allowed sixty days for jurisdictional discovery, following which the parties presented supplemental evidence and argument on the motion. The motion is now ripe for consideration.

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of an action for lack of subject matter jurisdiction. Where a defendant moves for dismissal under Rule 12(b)(1) and submits affidavits, testimony, or other evidentiary materials in support of his motion, the plaintiff is required in

3

response to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the court does have subject matter jurisdiction. Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981).

District courts have diversity jurisdiction over civil actions between "citizens of different States," where the amount in controversy is over $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).[2]  For jurisdiction based on diversity of citizenship, there must be complete diversity, meaning that the citizenship of every plaintiff must be different from that of every defendant. Caterpillar Inc. v. Lewis, 519 U.S. 61, 68, 117 S. Ct. 467, 136 L. Ed. 2d 437 (1996). Such complete diversity "must be present at the time the complaint is filed." Mas v. Perry, 489 F.2d 1396, 1399 (5th Cir. 1974).

For purposes of diversity jurisdiction, an individual is a citizen of the state where he establishes his domicile. Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc., 485 F.3d 793, 797 (5th Cir. 2007). "'Citizenship' and 'residence' are not synonymous," Parker v. Overman, 59 U.S. 137, 141, 18 How. 137, 15 L.Ed. 318 (1855); thus, "[a] party's residence in a state alone does not establish domicile. Domicile requires residence in the state and an intent to remain in the state." Id. at 798

---

[2] Defendants acknowledge that the amount in controversy exceeds $75,000.

4

(citations omitted).  As Judge Starrett explained in the case of Farris v. Bevard,

> "A person acquires a 'domicile of origin' at birth, and this domicile is presumed to continue absent sufficient evidence of change." Acridge v. Evangelical Lutheran Good Samaritan Society, 334 F.3d 444, 448 (5th Cir. 2003) (quoting Palazzo v. Corio, 232 F.3d 38, 42 (2d Cir. 2000)). The terms "domicile" and "residence" are not synonymous. See Combee v. Shell Oil Co., 615 F.2d 698, 700 (5th Cir. 1980) (citing Mas v. Perry, 489 F.2d 1396, 1399 (5th Cir. 1974)). "Evidence of a person's place of residence, however, is *prima facie* proof of his domicile." Hollinger v. Home State Mut. Ins. Co., 654 F.3d 564, 571 (5th Cir. 2011) (citations omitted). "A person's domicile persists until a new one is acquired or it is clearly abandoned." Coury [v. Prot, 85 F.3d 244, 250 (5th Cir. 1996] (citations omitted). The presumption in favor of continuing domicile can be overcome by evidence of an individual's residence in a new state and his or her intention to remain in the new state indefinitely. Acridge, 334 F.3d at 448. The mere presence of an individual in a new locale, without any showing of the requisite intent, is insufficient to establish a change in domicile. Id.; see also Welsh v. Am. Sur. Co. of New York, 186 F.2d 16, 17 (5th Cir. 1951) ("Mere absence from a fixed home, however long continued, cannot work the change."). Courts have utilized several factors in determining whether an individual has changed his domicile, including "the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family." Acridge, 334 F.3d at 448 (quoting Coury, 85 F.3d at 251). All factors are weighed equally with no single factor being determinative. Id.

No. 2:15-CV-25-KS-JCG, 2015 WL 3885501, at *2 (S.D. Miss. June 24, 2015).

It is undisputed that at the time the complaint in this cause was filed, defendants were living in Alabama, at the home of

5

Elijah Bell's mother, and had been living there for approximately eleven months. However, for fourteen years prior to the fire that destroyed their home, defendants had lived at their home in Scooba, Mississippi.[3] During that time, defendants were domiciled in Mississippi, notwithstanding that many of the traditional indicia of domicile would have suggested an Alabama domicile. They worked in Alabama; they banked in Alabama; they were members of an Alabama church; they had Alabama cellular telephone numbers; and Clarissa Bell had an Alabama driver's license. In addition, Clarissa Bell listed an Alabama address – her parents' address – on her tax returns. Throughout this time, however, Elijah Bell had a Mississippi driver's license; Clarissa Bell, despite being a member of an Alabama church, actually attended church in Mississippi; Elijah Bell was registered to vote only in Mississippi, though he apparently had not recently voted in an election;[4] defendants' vehicles were registered in Mississippi; they owned the real property at 5922 Binsville Road, where their home was located; and they paid property taxes on that property.

---

[3] Farm Bureau has presented evidence which indicates that for some period of time around January 2015, six months before the fire loss, defendants were separated, with Clarissa and the parties' son living at the home in Scooba and Elijah living at his mother's home in Alabama. According to defendants' affidavits, however, at the time of the fire, they were both living at their Scooba home. The court has no basis to disbelieve their statements on this point.

[4] There is no indication that Clarissa Bell was registered to vote in either state.

None of this changed after defendants moved in with Elijah Bell's mother after the fire.

In the court's opinion, in the circumstances of this case, the fact that defendants worked and banked, and had the various other referenced connections to Alabama, at the time this suit was filed and at all times since, does not suggest an intention by defendants to *change* their domicile from Mississippi to Alabama.[5] Nothing actually *changed*, other than their place of residence. Defendants maintain that they have never intended this change of residence to be anything other than temporary, as they fully intend to return to Mississippi when they are financially able to rebuild their home in Scooba.

The Fifth Circuit has held that "[a] litigant's statement of intent is relevant to the determination of domicile, but it is entitled to little weight if it conflicts with the objective facts." Coury, 85 F.3d at 251. Farm Bureau submits that the evidence does indeed contradict defendants' statements of intent. In this regard, it first points to a witness statement given by Clarissa Bell to the Kemper County Sheriff's Department in January 2015 in which she reported that she and Elijah Bell were

---

[5] This confluence of contemporaneous connections to Mississippi and Alabama is attributable to the proximity of Scooba, Kemper County, Mississippi to Alabama. Kemper County borders Alabama to the east; and defendants' home in Scooba was less than five miles from the Alabama border.

7

separated, with Elijah Bell living in Alabama with his mother, and
stated that Elijah Bell had threatened to burn down the parties'
home.  Farm Bureau further points out that Elijah Bell leased a
rental unit in Livingston, Alabama on June 1, 2016, just eight
days before the fire loss.  Farm Bureau reasons that Elijah Bell's
expressed intent to burn the Scooba home and his obtaining an
Alabama apartment prior to the subject fire indicate a clear
intent to remain in Alabama, despite the contrary assertions in
defendants' affidavits.  Lastly, it submits that, given the fire
loss, defendants have no appreciable reason to move back to
Mississippi, since their entire lives are in Alabama.

In the court's opinion, having considered the parties'
arguments and evidence, a preponderance of the evidence does not
belie defendants' professed intent to return to Mississippi.
Defendants have submitted supplemental affidavits in which they
explain that on June 1, 2016, Elijah Bell did lease an apartment
in Livingston, Alabama, but the apartment was not for him.
Rather, he leased the apartment for the couple's son to live in
while attending the University of West Alabama (UWA).  Ultimately,
however, he broke the lease in October 2017 because the furniture
they planned to use to furnish the apartment was destroyed in the
fire.  Farm Bureau points out that defendants' son was not
actually enrolled at UWA when the apartment was leased; that their
son's name was not on the lease agreement; and that the only

8

address UWA had for him was 1311 Sumter 74, Livingston, Alabama, Clarissa's parents' address.  None of these facts casts doubt on defendants' explanation.  Housing arrangements during college tend to be temporary, so it would not have been unusual for defendants' son to have provided UWA a home address rather than an apartment address.  Moreover, that the lease term commenced in June rather than August is of no moment; a school term is often shorter than a lease term.  And if the parents, and not the son, were going to be responsible for the rent payments, there would be no need for the son's name to appear on the lease documents.

Clarissa Bell did report to law enforcement in January 2015 that her husband was living in Alabama and that he had threatened to burn the home.  However, the fact that defendants were living apart for a period of time some six months before the fire and, more pertinently, over a year before this suit was filed, does not tend to show that the couple has ever intended to remain in Alabama rather than return to Mississippi.

Finally, the court notes that Farm Bureau appears to cite "facts" relating to the fire itself and to defendants' alleged conduct in the wake of the fire as demonstrating defendants' alleged intent to remain in Alabama.  Specifically, Farm Bureau appears to suggest that if defendants truly intended to make their home in Mississippi, then Elijah Bell would not have burned the home in the first place; and, even if he did not burn the home,

9

then defendants would have been cooperative and forthcoming during Farm Bureau's investigation of the fire loss so that they could recover the policy benefits and set about the business of rebuilding their home. It posits that in this way, their conduct contradicts their affidavits. To accept Farm Bureau's argument in this regard, the court would have to presume that Elijah Bell committed arson and/or that the parties breached the insurance contract. This would obviously not be proper in the context of the present motion. Cf. Parker v. Gulf City Fisheries, Inc., 803 F.2d 828, 829 (5th Cir. 1993) (as with other questions of subject matter jurisdiction, if "the factual findings regarding subject matter jurisdiction are intertwined with the merits," jurisdiction will be assumed).

Based on all of the foregoing, it is ordered that defendants' motion to dismiss is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 30th day of August, 2017.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE